

SIGNED this 14th day of September, 2011

_Shelley D. Rucker_
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

RAYMOND SHERMAN HANSEN, and              No.10-13181
DEBORAH SLAUGHTER HANSEN                  Chapter 13

       Debtors;

FIRST TENNESSEE BANK NATIONAL
ASSOCIATION,

       Plaintiff,

v.                                       Adversary Proceeding
                                         No. 10-1466

RAYMOND SHERMAN HANSEN, and
DEBORAH SLAUGHTER HANSEN

       Defendants.

### MEMORANDUM

Defendants and Debtors Raymond Sherman Hansen and Deborah Slaughter Hansen

("Debtors" or "Defendants") move to amend their answer and counterclaim. [Doc. No. 32].[1] The Plaintiff First Tennessee Bank National Association (the "Bank" or "Plaintiff") has failed timely to respond to the motion to amend. This court's local rules provide that "[a] failure to respond timely will be construed to mean that the respondent does not oppose the relief requested by the motion." Bankr. E.D. Tenn. L.R. 7007-1(a).

The Bank has filed a motion to dismiss the Defendants' original counterclaim. [Doc. No. 32]. The Defendants oppose the motion to dismiss and have filed the motion to amend to clarify the facts underpinning their counterclaim. [Doc. No. 33]. The court will issue a separate memorandum and order regarding the Bank's motion to dismiss.

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## I.    Background

The Debtors filed their Chapter 13 voluntary bankruptcy petition on June 1, 2010. [Bankr. Case No. 10-13181, Doc. No. 1]. The Bank filed this adversary proceeding against the Debtors on December 22, 2010. [Doc. No. 1, Complaint ("Complaint")]. In its complaint, the Bank asserts that the Debtors executed and delivered to it a balloon note in the original "principal amount of $476,012.00." *Id.* at ¶ 4. The note was secured by real property located in Chattanooga, Tennessee (the "Collateral"). *Id.* at ¶ 5. The Debtor's original Chapter 13 plan proposed to pay the Bank $3215 per month in maintenance payments and monthly payments of $70 to be paid towards arrearage estimated by the Bank. *Id.* at ¶ 6. After the Bank filed its secured Proof of Claim in the amount of $463,183.96, the Debtors submitted an amended Chapter 13 plan that proposed to surrender the Collateral to the Bank "with an allowed

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 10-1466, unless otherwise noted.

unsecured claim for any deficiency balance." *Id.* at ¶ 8. The Bank did not object to this treatment of the Collateral, and this court confirmed the amended plan on October 17, 2010. *See* [Bankr. Case No. 10-13181, Doc. No. 27].

In its Complaint the Bank alleges that "[u]pon information and belief, on or about November 9, 2010, law enforcement authorities discovered a large, illegal laboratory engaged in the manufacture of methamphetamine within the confines of the Collateral, resulting in the arrest of three (3) men found inside the home." Complaint, ¶ 12. The Bank asserts that pursuant to Tennessee law, law enforcement authorities have placed the Collateral under an "order of quarantine" "due to risk of human exposure to the byproducts, chemicals, odors, vapors and fumes associated with the manufacture of methamphetamine." Complaint, ¶ 15. The Bank asserts that "[b]y remaining silent about the methamphetamine laboratory and surrendering the Collateral to the Bank in the Amended Plan, the Defendants have fraudulently attempted to shift liability for clean-up and remediation to the Bank or an innocent third party purchaser." *Id.* at ¶ 22.

The Bank's first asserted claim against the Debtors seeks dismissal of the Debtors' bankruptcy case for cause pursuant to 11 U.S.C. § 1307(c). It asserts that the Debtors materially misrepresented their bankruptcy statements and schedules, perpetrated a fraud on the court and their creditors, allowed a methamphetamine laboratory to operate in their residence and hid such laboratory from the Bank. Complaint, ¶ 26. The Bank's second cause of action asks this court to find the Debtors' debt owed to it nondischargeable pursuant to 11 U.S.C. § 523(a)(6) due to willful and malicious injury. The third cause of action in the Complaint is a claim for the enforcement of the Bank's note and deed of trust. Complaint, ¶ 39.

The Debtors filed their answer to the Complaint on June 8, 2011. [Doc. No. 16, Answer ("Answer")]. In their Answer they filed a counterclaim against the Bank. Their original counterclaim asserted in relevant part:

Counter-Claimants' former residence at 1007 E. Dallas Road, Chattanooga, Tennessee was placed under the custody and control of the Counter-Defendant before the Counter-Claimants had the opportunity to remove all of their personal possessions.

Despite assurances by agents of the Counter-Defendant, the Counter-Plaintiffs would be given the opportunity to remove their personal possessions from the real estate, their possessions were removed and destroyed by Counter-Defendant or its agent.  Accordingly, Counter-Plaintiffs have been damaged in an amount to be shown by the Court.

Answer, ¶¶ 4-5.

The Bank moved to dismiss the Debtors' counterclaim on June 29, 2011. [Doc. No. 22].

The Debtors oppose the motion to dismiss and also move to amend their counterclaim. [Doc. Nos. 32, 33].  They have filed a proposed amended answer and counterclaim ("Proposed Amended Answer") with the motion to amend.  [Doc. No. 32-1].

In their Proposed Amended Answer, the Defendants provide more factual details pertaining to their counterclaim.  They assert:

Counter-Claimants' former residence at 1007 E. Dallas Road, Chattanooga, Tennessee was placed under the custody and control of the Counter-Defendant before Counter-Claimants had the opportunity to remove all of their personal possessions.

On or about February 3, 2011, Plaintiff's Chapter 13 Counsel was notified that the Plaintiffs should contact Steve Brown at ServPro to make arrangements as to any personal property they wished to salvage. . . .

Counter-Claimant Ray Hansen contacted Steve Brown at ServPro soon after receiving his name as the contact information.  Mr. Brown told Mr. Hansen that ServPro's bid had not actually been approved for First Tennessee Bank yet, but that he would get Mr. Hansen access to the house after he got clearance from the meth task force so that Mr. and Mrs. Hansen could choose what personal property should be treated and removed.  Mr. Hansen drove by the property in mid-February and saw that the house had been stripped and that there was no personal property present.  Upon further inquiry, Mr. Hansen learned from Mr. Brown that the Bank had instructed him to dispose of the personal property. The Bank and its agents represented to the Hansens that they would have the opportunity to gain access to the property to determine what personal possessions could be saved.  In order to complete its remediation of the property, the Bank, through its agents, disposed of the Counter-Claimants' personal possessions in defiance of their ownership rights.

[Doc. No. 32-1, Proposed Amended Answer, p. 5, ¶¶ 4-8]. The Defendants claim that the Bank converted and destroyed their personal property. The Proposed Amended Answer provides a copy of an email from the Bank to Defendants' counsel regarding the Defendants' opportunity to retrieve their personal belongings from the residence as Exhibit A. [Doc. No. 32-1, p. 8, Ex. A].

## II.    Analysis

Federal Rule of Civil Procedure 15(a), made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7015, provides that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant or deny leave to amend, the Sixth Circuit has explained that courts should review the parties' "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the amendment." *James v. GM-DI Leasing Corp. (In re Imagepoint Inc.)*, No. 09-3070, 2010 WL 3037436, at * 3 (Bankr. E.D. Tenn. July 29, 2010) (citing *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005)).

In reviewing these factors in this case, the court concludes that it should provide the Defendants with leave to amend. The Defendants filed their motion to amend along with their response to the Bank's motion to dismiss, so no undue delay exists. The Bank had notice of the original counterclaim and the proposed amendment provides ample notice to the Bank of the Defendants' specific allegations prior to trial. The Bank has not alleged any bad faith on the part of the Defendants. The Defendants have not amended their answer and counterclaim on any previous occasions. The amendment will not unduly prejudice the Bank as trial is not scheduled in this proceeding for many months. Finally, upon review of the Proposed Amended Answer, the court concludes that the amended counterclaim is not futile as it provides sufficient details of the Defendants' claim to withstand the Bank's motion to dismiss. Moreover, the Bank does not oppose the motion to amend. For these reasons, the court concludes that the

Defendants' motion to amend will be GRANTED.

**III.    Conclusion**

As explained *supra*, the court concludes that it should grant the Defendants leave to amend their answer and counterclaim.  For these reasons, the court will GRANT the Defendants' motion to amend.

A separate order will enter.

# # #