**SIGNED this 14th day of September, 2011**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF TENNESSEE
# SOUTHERN DIVISION

In re:

RAYMOND SHERMAN HANSEN, and　　　　　　　　No.10-13181
DEBORAH SLAUGHTER HANSEN　　　　　　　　　　Chapter 13

　　　　　Debtors;

FIRST TENNESSEE BANK NATIONAL
ASSOCIATION,

　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Adversary Proceeding
　　　　　　　　　　　　　　　　　　　　　　　No. 10-1466

RAYMOND SHERMAN HANSEN, and
DEBORAH SLAUGHTER HANSEN

　　　　　Defendants.

**MEMORANDUM**

The plaintiff First Tennessee Bank National Association ("Plaintiff" or the "Bank") moves

to dismiss the defendants' counterclaim. [Doc. No. 22].[1]  Defendants and debtors Raymond Sherman Hansen and Deborah Slaughter Hansen ("Debtors" or "Defendants") oppose the motion to dismiss.  [Doc. No. 33].  They further move to amend their answer and counterclaim. [Doc. No. 32].  This court is issuing its memorandum and order granting the Defendants' motion to amend simultaneously with this memorandum opinion pertaining to the Bank's motion to dismiss.

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## I.  Background

The Debtors filed their Chapter 13 voluntary bankruptcy petition on June 1, 2010. [Bankr. Case No. 10-13181, Doc. No. 1].  The Bank filed this adversary proceeding against the Debtors on December 22, 2010. [Doc. No. 1, Complaint ("Complaint")].  In its Complaint, the Bank asserts that the Debtors executed and delivered to it a balloon note in the original "principal amount of $476,012.00."  *Id.* at ¶ 4.  The note was secured by real property located in Chattanooga, Tennessee (the "Collateral").  *Id.* at ¶ 5.  The Debtor's original Chapter 13 plan proposed to pay the Bank $3215 per month in maintenance payments and monthly payments of $70 to be paid towards arrearage estimated by the Bank.  *Id.* at ¶ 6.  After the Bank filed its secured Proof of Claim in the amount of $463,183.96, the Debtors submitted an amended Chapter 13 plan that proposed to surrender the Collateral to the Bank "with an allowed unsecured claim for any deficiency balance."  *Id.* at ¶ 8.  The Bank did not object to this treatment of the Collateral, and this court confirmed the amended plan on October 17, 2010. *See* [Bankr. Case No. 10-13181, Doc. No. 27].

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 10-1466, unless otherwise noted.

In its Complaint the Bank alleges that "[u]pon information and belief, on or about November 9, 2010, law enforcement authorities discovered a large, illegal laboratory engaged in the manufacture of methamphetamine within the confines of the Collateral, resulting in the arrest of three (3) men found inside the home." Complaint, ¶ 12. The Bank asserts that pursuant to Tennessee law, law enforcement authorities have placed the residence under an "order of quarantine" "due to risk of human exposure to the byproducts, chemicals, odors, vapors and fumes associated with the manufacture of methamphetamine." Complaint, ¶ 15. The Bank asserts that "[b]y remaining silent about the methamphetamine laboratory and surrendering the Collateral to the Bank in the Amended Plan, the Defendants have fraudulently attempted to shift liability for clean-up and remediation to the Bank or an innocent third party purchaser." *Id.* at ¶ 22.

The Bank's first asserted claim against the Debtors seeks dismissal of the Debtors' bankruptcy case for cause pursuant to 11 U.S.C. § 1307(c). It asserts that the Debtors materially misrepresented their bankruptcy statements and schedules, perpetrated a fraud on the court and their creditors, allowed a methamphetamine laboratory to operate in their residence and hid such laboratory from the Bank. Complaint, ¶ 26. The Bank's second cause of action asks this court to find the Debtors' debt owed to it nondischargeable pursuant to 11 U.S.C. § 523(a)(6) due to willful and malicious injury. The third cause of action in the Complaint is a claim for the enforcement of the Bank's note and deed of trust. Complaint, ¶ 39.

The Debtors filed their answer to the Complaint on June 8, 2011. [Doc. No. 16, Answer ("Answer")]. In their Answer they filed a counterclaim against the Bank. Their original counterclaim asserts in relevant part:

> Counter-Claimants' former residence at 1007 E. Dallas Road, Chattanooga, Tennessee was placed under the custody and control of the Counter-Defendant before the Counter-Claimants had the opportunity to remove all of their personal possessions.

> Despite assurances by agents of the Counter-Defendant, the Counter-Plaintiffs would be given the opportunity to remove their personal possessions from the real estate, their possessions were removed and destroyed by Counter-Defendant or its agent. Accordingly, Counter-Plaintiffs have been damaged in an amount to be shown by the Court.

Answer, p. 5, ¶¶ 4-5.

The Bank moved to dismiss the Debtors' counterclaim on June 29, 2011. [Doc. No. 22]. The Debtors oppose the motion to dismiss and have moved to amend their counterclaim. [Doc. Nos. 32, 33]. They have filed a proposed amended answer and counterclaim with the motion to amend. [Doc. No. 32-1]. This court has granted the motion to amend in a separate memorandum and order.

> In their amended counterclaim, the Defendants assert:
>
> Counter-Claimants' former residence at 1007 E. Dallas Road, Chattanooga, Tennessee was placed under the custody and control of the Counter-Defendant before Counter-Claimants had the opportunity to remove all of their personal possessions.
>
> On or about February 3, 2011, Plaintiff's Chapter 13 Counsel was notified that the Plaintiffs should contact Steve Brown at ServPro to make arrangements as to any personal property they wished to salvage. . . .
>
> Counter-Claimant Ray Hansen contacted Steve Brown at ServPro soon after receiving his name as the contact information. Mr. Brown told Mr. Hansen that ServPro's bid had not actually been approved for First Tennessee Bank yet, but that he would get Mr. Hansen access to the house after he got clearance from the meth task force so that Mr. and Mrs. Hansen could choose what personal property should be treated and removed. Mr. Hansen drove by the property in mid-February and saw that the house had been stripped and that there was no personal property present. Upon further inquiry, Mr. Hansen learned from Mr. Brown that the Bank had instructed him to dispose of the personal property. The Bank and its agents represented to the Hansens that they would have the opportunity to gain access to the property to determine what personal possessions could be saved. In order to complete its remediation of the property, the Bank, through its agents, disposed of the Counter-Claimants' personal possessions in defiance of their ownership rights.

[Doc. No. 32-1, Proposed Amended Answer, Counterclaim, p. 5, ¶¶ 4-8].

## II.    Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil

Procedure 12(b) applies to adversary proceedings.  *See* Fed. R. Bankr. P. 7012(b).  Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)).  In addition, a court must construe all allegations in the light most favorable to the plaintiff.  *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007).  The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

**III.    Analysis**

The Defendants' amended counterclaim seeks damages for conversion and destruction of property.  Under Tennessee law:

> [c]onversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights.  Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights.
>
> Property may be converted in three ways.  First, a person may personally dispossess another of tangible personalty.  Second, a person may dispossess another of tangible property through the active use of an agent.  Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel."

*H & M Enterprises, Inc. v. Murray*, No. M1999-02073-COA-R3-CV, 2002 WL 598556, at *3

(Tenn. Ct. App. April 17, 2002) (citing *Kinnard v. Shoney's Inc.*, 100 F.Supp.2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)) (other citations omitted); *see also, Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008).  In *Kinnard* the court explained that "[i]n order to establish conversion, the plaintiffs must show that 'the defendant . . . had an intent to exercise dominion and control over the property that is in fact inconsistent with the plaintiffs' rights, and did so.'" 100 F.Supp.2d at 797-98 (citing *Oldham*, 569 S.W.2d at 836).

The amended counterclaim clarifies the Defendants' assertion that the Bank informed them as late as February 3, 2011 how to take steps to preserve any personal property contained in their residence.  The Defendants assert that they promptly contacted the individual whom the Bank instructed them to contact, Steve Brown with ServPro, in an attempt to coordinate retrieval of certain personal items.  They allege that Mr. Brown agreed to notify them regarding when they could have access to the Collateral, their former residence, but they later learned that their personal property had been destroyed.  Exhibit A to the amended counterclaim consists of an email dated February 3, 2011 and sent from the Bank's attorney to counsel for the Defendants exhorting the Defendants to "act promptly" if they wanted to "salvage" any "personal property." [Doc. No. 32-1, Exhibit A].  The Defendants allege in the amended counterclaim that "[u]pon further inquiry, Mr. Hansen learned from Mr. Brown that the Bank had instructed him to dispose of the personal property." *Id.* at p. 7, ¶ 6.  Thus, the Defendants allege in their amended counterclaim that the Bank had control over their personal property and instructed its agent to destroy the property, even after the Defendants expressed a desire to attempt to retrieve some or all of their property.  The court concludes that the Defendants have alleged enough facts in their amended counterclaim to state a plausible cause of action for conversion.  The assert that the Bank exercised control over their property in defiance of their rights and authorized the destruction of such property without the Debtors'

consent. Although the Bank argues that the Defendants abandoned their property by not promptly responding to its December 8, 2010 letter, the allegations in the amended counterclaim, as well as Exhibit A support the Defendants' theory that they were still negotiating with the Bank regarding retrieval of their possessions as late as February of 2011. Thus, if the Bank knew that the Defendants desired to obtain access to their former residence to secure personal belongings and authorized the destruction of those items without the Defendants' knowledge or consent, it is possible that the Bank is liable for the tort of conversion. The court must view the facts in the light most favorable to the counter-claimants on the Bank's motion to dismiss. Whether the Defendants can prove the elements of their claim following discovery is yet to be determined, but the court concludes that the amended counterclaim is sufficiently detailed with a plausible claim for relief and a viable legal theory to withstand the Bank's motion to dismiss. For this reason, the Bank's motion to dismiss will be DENIED.

### IV.    Conclusion

As explained *supra*, the court concludes that the Defendants' amended counterclaim for conversion alleges a plausible claim for relief. For this reason, the court will DENY the Bank's motion to dismiss.

A separate order will enter.

# # #